# EXHIBIT C

**EXHIBIT 9**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

MEYER INTELLECTUAL PROPERTIES, LIMITED;
and MEYER CORPORATION, U.S.

        Plaintiffs,

v.

BODUM, INC.,

        Defendant.

Civil Action No. 06-CV-6329

Judge Milton I. Shadur

Magistrate Judge Sidney I. Schenkier

### CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the Expert Report of Robert John Anders, IDSA was served July 24, 2009 by hand delivery upon:

    Allan J. Sternstein
    Katharine N. Dunn
    Timothy K. Sendek
    Dykema Gossett PLLC
    10 South Wacker Drive, Suite 2300
    Chicago, IL 60606

                                       Sheila Nicholson

David E. Bennett
Robert S. Rigg
William J. Voller III
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL  60601-1003
(312) 609-7500

CHICAGO/#1961763.1

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEYER INTELLECTUAL PROPERTIES LIMITED and MEYER CORPORATION, U. S., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 06-CV-6329 |
| v. | § § | |
| BODUM, INC. | § § | Judge Milton I. Shadur |
| Defendant. | § § § | Magistrate Judge Sidney I. Schenkier |

**EXPERT REPORT OF ROBERT JOHN ANDERS, IDSA**

**PREFACE**

This Expert Report is divided into three parts.

Part A contains:

| | |
|---|---|
| I. | Introduction |
| II. | Background, Education and Qualifications |
| III. | Documents and Objects Reviewed as Basis of My Opinions |
| IV. | Working Knowledge of Applicable Laws |
| V. | Remarks |

Part B contains:

| | |
|---|---|
| I. | My Understanding of Inequitable Conduct |
| II. | Frothing and Prior Art Apparatus |
| III. | The Actions of Frank A. Brady |
| IV. | Conclusions |
| V. | Remarks |

1

**EXHIBIT 9**

Part C contains:

I.      My Understanding of Patent Law to Determine Invalidity

II.     Claim Construction

III.    A Person of Ordinary Skill in the Art

IV.     My Invalidity Analysis of United States Patent 5,780,087 Under § 103 Obviousness

V.      My Invalidity Analysis of United States Patent 5,780,087 Under § 112 Specification

VI.     My Invalidity Analysis of United States Patent 5,939,122 Under § 103 Obviousness

VII.    Remarks

**EXHIBIT 9**

A

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEYER INTELLECTUAL PROPERTIES LIMITED and MEYER CORPORATION, U. S., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 06-CV-6329 |
| v. | § § | |
| BODUM, INC. | § § | Judge Milton I. Shadur |
| | § | Magistrate Judge Sidney I. Schenkier |
| Defendant. | § § § | |

**EXPERT REPORT OF ROBERT JOHN ANDERS, IDSA**

**PART A**

## I.   INTRODUCTION

1.   I have been retained as an industrial design expert by Vedder Price P.C., counsel for the defendant, Bodum, Inc. (hereinafter "Bodum") to opine on the validity of United States Patent 5,780,087 to Brady issued on July 14, 1998 and United States Patent 5,939,122 to Brady issued on August 17, 1999, and asserted by Meyer Intellectual Properties Limited and Meyer Corporation, U.S. (hereinafter "Meyer"). I have also decided to evaluate the conduct of Mr. Frank A. Brady (hereinafter "Brady") regarding the designs of the apparatus he presented to the USPTO.

## II.   BACKGROUND, EDUCATION AND QUALIFICATIONS

2.   I am a resident of Warwick, New York and have been an industrial designer for the past 50 years, and have experience in both practical and academic areas of the industrial design field, which is detailed in my Curriculum Vitae attached as Exhibit 1.

3

**EXHIBIT 9**

3.  In August of 2000, I retired as a tenured Professor of Industrial Design from Pratt Institute, one of the largest and most prestigious schools of Art, Design and Architecture in the United States.  I had been a member of the faculty at Pratt since 1988.

4.  Throughout my teaching career, I developed a wide variety of course materials related to industrial design and ergonomics during this period.  I authored nineteen papers that were published and /or presented to professional societies and organizations.  A listing of my publications is contained in Exhibit 2.

5.  Among the many courses I taught were those involving consumer product design.  I also attended the housewares show in Chicago for at least three years.

6.  I also lectured and/or taught Design at the following institutions:

    6.1.  University of Southwestern Louisiana, School of Architecture, Lafayette, Louisiana;

    6.2.  Miami University, Miami, Ohio;

    6.3.  University of Industrial Arts, Helsinki, Finland;

    6.4.  North Carolina State University;

    6.5.  Department of Interior Design, Pratt Institute;

    6.6.  High School of Art & Design, Industrial Design Department, New York;

    6.7.  Cooper Hewitt Museum, New York;

    6.8.  University of Seville, Spain;

    6.9.  Department of Industrial Design, University of Essen, Essen, Germany.

7.  I was founder and Head of the Design Management Program at Pratt, which was the first and only graduate program in the United States awarding a masters degree in design management.  I also created and was Head of the Graduate Arts & Cultural Management Program at Pratt.  I had previously served as Acting Associate Dean of the School of Art and Design.  In 1995 I was elected by my peers to a three-year term as President of the Academic Senate at Pratt Institute.

8.  I majored in Industrial Design at one of New York's elite public high schools and the largest high school in the United States, Brooklyn Technical High School, from 1948 to 1950.

9.  After enrolling in Pratt Institute in 1950, I also majored in industrial design.  However, in 1952 during the Korean War, I volunteered to serve in the United States Navy from 1952

4

EXHIBIT 9

to 1956.  I served as an aerial photographer (PHA/2); a deep-sea diver (Diver/2) on the Amphibious Force Command Ship, USS Mount McKinley, AGC 7; and a scuba diver and underwater photographer (PHA/1) as a member of the Pacific Fleet Combat Camera Group, in operations with UDT-1 (Underwater Demolition Team), UDOM-1 (Underwater Demolition and Ordinance Materiel) and the British Royal Navy Underwater Demolition Team (Hong Kong).

10.    After four years of military service, I returned to Pratt Institute to complete my education and graduated in 1958 with a Bachelor of Industrial Design (BID) degree.  At graduation, I was awarded the Industrial Design Department's highest honor: the *Dean's Medal*.

11.    After graduation from Pratt, I then spent thirty years in the industrial design profession in a variety of senior design management positions, both as head of my own consultancies as well as serving as a senior design executive at two major corporations, Bristol-Myers Company and Revlon, Inc.

12.    Since 1990, I have served as an Expert Witness in 17 utility patent cases.  Exhibit 3 provides additional information regarding this work, and lists the cases wherein I testified as an expert in industrial design over the past four years.

13.    Prior to this litigation, and my retention by counsel for Bodum, I have had no previous relationship or contact with either of the parties involved in this case.

14.    I am a member (#19785) of the Industrial Designers Society of America (IDSA), the Human Factors and Ergonomics Society (HFES) #12595, and the National Association of Naval Photography.

**III.    DOCUMENTS AND OBJECTS REVIEWED AS BASIS OF MY OPINIONS**

15.    My expert opinions are based upon my knowledge, background, and experience and my review of the materials listed below:

15.1.    Complaint for Patent Infringement, filed Nov. 20, 2006;

15.2.    United States Patent 5,780,087 (hereinafter the '087 patent) to Brady issued Jul. 14, 1998, attached as Exhibit 4;

15.3.    the file wrapper and all the prior art cited on the '087 patent;

15.4.    United States Patent 5,939,122 (hereinafter the '122 patent) to Brady issued Aug. 17, 1999 attached as Exhibit 5;

15.5.    file wrapper and all the prior art cited on the '122 patent;

5

**EXHIBIT 9**

15.6. a packaged product identified as "Bonjour® Caffe Froth® Maximus™ Milk Frother" purportedly the commercial embodiment of the '087 and '122 patents, with my documented photographs attached as Exhibit 6;

15.7. a packaged product identified as a "Bodum Aerius Milk Frother" and labeled with Bates No. B0002, which has been accused of infringing the '087 and '122 patents, with my documented photographs attached as Exhibit 7;

15.8. a packaged product identified as a "Bodum Aerius Milk Frother" and labeled with Bates No. B0003, which has been accused of infringing the '087 and '122 patents;

15.9. United States Patent 5, 580,169 to Ghidini issued Dec. 3, 1996 attached as Exhibit 8;

15.10. Frabosk Italian Patent, dated July 28, 1997;

15.11. United States Reissued Patent US RE37, 137 E to Ghidini issued April 17, 2001, attached as Exhibit 9;

15.12. Patent Serial No. 08/021,204 (RE 37,137) Prosecution File History (Bates Nos. B-2444-B2692);

15.13. English translation of Decision of the Technical Board of Appeal of 25 March 2002, invalidating European Patent 713,669 to Frabosk, (Bates Nos. B0190-B0207) attached as Exhibit 10;

15.14. drawing dated 27-11-58 bearing Bates No. B2933;

15.15. drawings dated 21-6-1961 bearing Bates Nos.B2934-B2937;

15.16. a drawing titled *Cafetiere Melior* number 1074 dated 21.6.1961 without Bates No. and identical to drawing with Bates No. 2937 and attached as Exhibit 11;

15.17. drawing of Bodum container for frothing milk (Bates Nos. B0948) attached as Exhibit 22;

15.18. advertising (Bates Nos. B0340-B0345);

15.19. information from Bodum website, dated 8/16/07 (Bates Nos. B1726-B1734);

15.20. cover letter to Allan J. Sternstein with attached Bodum Inc.'s Second Supplemental Answers to Plaintiff's Interrogatories Nos. 2 and 3 and documents bearing Bates labels numbered B01737-B01743;

15.21. Declaration of Thomas F. Pérez (Bates Nos. B01744-B01760);

6

**EXHIBIT 9**

15.22.  drawings of Bodum Glass containers (Bates Nos. B01780- B01783) attached as Exhibit 21;

15.23.  July 1982 catalog of Bonjour Imports Corporation products (Bates Nos. B2045-B2060);

15.24.  Autumn 1988 catalog of Bodum products (Bates Nos. B2061-B2101);

15.25.  1989/1990 catalog of Bodum products (Bates Nos. B2773-2827);

15.26.  1990/1991 catalog of Bodum products (Bates Nos. B2102-2148);

15.27.  1991/1992 catalog of Bodum products (Bates Nos. B2345-B2443);

15.28.  1993/1994 catalog of Bodum products (Bates B2149-B2246);

15.29.  1994/1995 catalog of Bodum products (Bates Nos. B2247-B2344);

15.30.  1996 catalog of Bodum products (Bates Nos. B2828-B2847) attached as Exhibit 12;

15.31.  1998 catalog of Bodum products (Bates Nos. B2848-B2850);

15.32.  1944-2004 *Sixty Years Danish Design by Bodum* (Bates Nos. B2851-B2932);

15.33.  *The Bodum Collection 85* (Bates Nos. B2718-2772);

15.34.  DVD of *The Ipcress File*. (Circa 1965) with a still image attached as Exhibit 13;

15.35.  Deposition testimony of Frank A. Brady, with exhibits, November 16, 2007;

15.36.  Deposition testimony of Jorgen Bodum with exhibits, March 23, 2009;

15.37.  Plaintiff's Opening Memorandum on Claim Construction, dated March 28, 2008;

15.38.  Defendant's Opening Claim Construction Brief, dated March 28, 2008;

15.39.  Memorandum Opinion and Order, dated May 14, 2008;

15.40.  Memorandum Opinion and Order, dated February 11, 2009;

15.41.  United States Patent 1,175,366 to Lucas issued Mar. 14, 1916, attached as Exhibit 14;

15.42.  United States Patent 1,768,765 to Hogancamp issued Jul. 1, 1930, attached as Exhibit 15;

15.43.  United States Patent 1,820,718 to Willems issued Aug. 25, 1931, attached as Exhibit 16;

15.44.  United States Patent 1,881,361 to Killman issued Oct. 4, 1932 attached as Exhibit 17;

7

**EXHIBIT 9**

15.45.   United States Patent 5,284,389 to Lumsden issued Feb. 8, 1994, attached as Exhibit 18;

15.46.   a packaged product Chambord, a 3 Cup Coffee Maker from Bodum, with my documented photographs attached as Exhibit 19;

15.47.   catalog pages of Bodum products (Bates Nos. B0340-0345);

15.48.   catalog pages of Bodum products (Bates Nos. B0351-0353);

15.49.   *French Press* printout from Wikipedia, 4/26/09, attached as Exhibit 20;

15.50.   Memorandum Opinion and Order, dated February 11, 2009;

15.51.   Bodum, Inc.'s Supplemental Answer to Interrogatory No. 14 of Plaintiff's Interrogatories, with pages having Bates Nos. B0964-0985;

15.52.   Defendant Bodum, Inc.'s Revised Supplemental Answers to Plaintiff's Interrogatories;

15.53.   deposition testimony of Jorgen Bodum, Volume II of May 19, 2009;

15.54.   a loose leaf binder containing catalog sheets from 1995 and 1996 of 10 different product lines.

15.55.   telephone conference with Mr. Jorgen Bodum on June 11, 2009;

15.56.   a Frabosk *Cappuccino Creamer* product.

16.   The inventor of the '087 and '122 patents committed inequitable conduct before the USPTO.

17.   The '087 patent is invalid.

18.   The '122 patent is invalid.

**IV.   WORKING KNOWLEDGE OF APPLICABLE LAWS**

19.   While I have acquired some working knowledge of the patent laws through classes I have taken, through seminars that I have attended, and from having served as an industrial design expert witness during the past eighteen years in fifty four previous cases concerning patents, I am not an expert in patent law.

20.   I understand that for a utility patent to be granted, the claimed invention must have novelty, utility and nonobviousness, while a design patent requires novelty, ornamentality and nonobviousness.

8

**EXHIBIT 9**

21.  I am familiar with Title 35 U.S.C., §102 (anticipation) which provides for patentability unless each and every element of a claimed invention existed in a single piece of prior art.

22.  I am familiar with Title 35 U.S.C., §103 (obviousness) which requires that an invention was not obvious to one skilled in the art to which the patent pertains and that a primary reference exists which when combined with one or more prior art examples would make obvious the claimed invention.

23.  I am familiar with Title 35 U.S.C. § 112 that requires that a disclosure must be enabling so that one skilled in the art to which the patent pertains may replicate the invention after reading the specification without undue experimentation.

24.  I am also familiar with the doctrine of file wrapper estoppel which states that elements of the invention that were canceled during the prosecution of a patent may not be reinstated and subsequently claimed.

25.  I understand that an issued patent is presumed to be valid.  I understand that an infringement analysis of a utility patent generally involves the following two steps.  First, the claims are construed by the Court to determine their meaning.  Second, the fact-finder determines whether the claims, as construed by the Court, read upon the accused product or method.

26.  I understand that for an accused product or method to literally infringe a claim, each and every element of the claim must be literally present in the accused product or method.  If one element of a claim is not present, then the entire claim is not infringed.  If an independent claim is not infringed, then the dependent claims associated with it are not infringed.  I understand that it is the burden of the plaintiff to establish infringement.

27.  I understand that patent infringement may be either literal or via what is termed the "doctrine of equivalents."  I understand that an element in the accused product is equivalent to a claim limitation if the differences between the two are "insubstantial" to one of ordinary skill in the art, that is, whether the element in the accused device performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation.

28.  I understand that it is the duty of patent applicants not to withhold material information from the Patent and Trademark Office (PTO) and the applicant has "a duty of candor and

9

**EXHIBIT 9**

good faith in their dealings with the PTO, and violation of that duty constitutes inequitable conduct."[1]

**V.    REMARKS**

29.    I currently hold the opinions expressed in this Expert Report. As my study of the case continues, I may acquire additional information and/or attain supplemental insights that result in added observations. I reserve the right to supplement this Expert Report and to rely on additional documents and testimony that come to my attention prior to my testimony, if any, at trial. For example, I may supplement this Expert Report to take into account the fact that Meyer may produce documents relevant to my analyses. Nevertheless, I believe that the information before me to date supports the opinions expressed in this Expert Report. I also reserve the right to rely on all other declarations and expert reports submitted in this litigation.

30.    Furthermore, I may also be called upon to provide expert analysis and opinions in rebuttal to any proofs brought forward by Meyer in this litigation.

31.    During my testimony at trial, hearing or deposition, I expect to rely upon exhibits prepared to depict and explain the information contained in this Expert Report or as rebuttal to testimony by Meyer's witnesses. Any such exhibits will be prepared and identified in advance of trial or any hearing.

32.    I HEREBY DECLARE under penalty of perjury that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. §1001.

Respectfully submitted,

Dated: July 21 , 2009

Robert John Anders

---

[1] *McCarthy's Desk Encyclopedia of Intellectual Property* 3rd ed., J. Thomas McCarthey, Roger E. Schechter, David J. Franklyn. BNA Books, Washington, DC. 2005. p.292.

10

**EXHIBIT 9**

B

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEYER INTELLECTUAL PROPERTIES LIMITED and MEYER CORPORATION, U. S., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 06-CV-6329 |
| v. | § § | |
| BODUM, INC. | § § | Judge Milton I. Shadur |
| Defendant. | § § § | Magistrate Judge Sidney I. Schenkier |

**EXPERT REPORT OF ROBERT JOHN ANDERS, IDSA**

**PART B**

### I.     MY UNDERSTANDING OF INEQUITABLE CONDUCT

1.    "Under PTO Rule 56, patent applicants and their representatives are under a duty of candor and good faith in their dealings with the PTO, and the violation of that duty constitutes inequitable conduct."[2]

2.    "When inequitable conduct is found after a patent has issued, all claims of the patent are rendered unenforceable, not merely those claims directly affected by the misconduct.  In addition, under the doctrine of unclean hands, related patents in suit may also be rendered unenforceable.  *Consolidated Aluminum Corp. v. Forseco Int'l Ltd.*, 910 F.2d 804, 810, 15 USPQ 2d 1481, 1987 (Fed. Cir. 1990)."[3]

---

[2] Ibid.
[3] Ibid., p.293.

1

**EXHIBIT 9**

- 265 -

3.    "The two key ingredients of inequitable conduct are 'materiality' and 'intent'".[4]

    3.1.    "*Materiality of the Information.*  Information is normally considered material if there is a substantial likelihood that a reasonable patent examiner would have considered it important in deciding whether to issue a patent."[5]

    3.2.    "*State of mind and intent.*  Intent need not be proven by direct evidence. It may be proven by showing that a party committed acts the natural consequences of which he could presumably foresee."[6]

4.    "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section....[N]o patents will be granted on an application in connection with which fraud on the Office was practiced or attempted with or the duty of disclosure was violated through bad faith or intentional misconduct. 37 C.F.R. §1.56(a)."[7]

**II.    FROTHING AND PRIOR ART APPARATUS**

5.    "Froth" is defined as: "1 a whitish mass of bubbles; foam"[8]

6.    "Frothing "is defined as: "1. To cover with foam.  2. To cause to foam."[9]

7.    There are three basic methods for producing froth in milk products.  They are:

    7.1.    the insertion of steam;

    7.2.    the use of a vertically moving plunger with openings in bottom plates; and

    7.3.    the use of an electrically powered rotary mechanical device.

8.    In spite of the fact there are three basic methods for producing frothing milk products, Brady in his application to the USPTO discusses only the insertion of steam method prior art and completely avoids disclosure of either of the other two well-known methods.

9.    The use of a vertically moving plunger with openings in bottom plates is well known and the following table details some of the prior art references that employed this method.

---

[4] Ibid.
[5] Ibid.
[6] Ibid
[7] Ibid., p.294
[8] Webster's New World College Dictionary, 3rd ed., McMillan USA, New York.  1996
[9] www.thefreedictionary.com/Frothing.

2

**EXHIBIT 9**

| **TABLE 1** | | |
| --- | --- | --- |
| **PRIOR ART REFERENCES THAT USED A PLUNGER TO FROTH LIQUID** | | |
|  | | |
| Fig 2 | Fig. 2 | Fig. 1 |
| U. S. Patent 1,175,366 | U.S. Patent 1,768,765 | U. S. Patent 5,580,169 |
| Issued Mar. 14, 1916 | Issued Jul. 1, 1930 | Issued Dec. 3, 1996 |

10.  So the method of aerating milk with a vertically operating plunger to create froth is old and well known.  Clearly, this well known method may be granted patent protection **in combination** with an original apparatus.

11.  Yet during the initial application process that led to the '087 patent, no mention was made of any of the prior art apparatus until almost a year after the initial application was filed when the Frabosk Italian patent was found by the examiner.

12.  After the examiner rejected a number of the claims in view of the Frabosk patent, the applicant met with the examiner on October 16, 1997 and demonstrated the Frabosk frothing product and distinguished the claimed invention from the apparatus of the Frabosk.  The examiner then wrote: "Discussed the aspect/combination of the configuration of the container and the configuration of the plunger that together produces a froth with a consistency different than the prior art."  **The applicant failed to reveal to the examiner that the apparatus used in Bodum's prior art French press (which he**

3

**EXHIBIT 9**

**was familiar with) could also be used to froth milk and that Bodum French press apparatus was substantially the same as the apparatus Brady claimed to have invented.** I note that Brady never was granted a claim for the apparatus.

13.      I now modify the demonstration performed at the USPTO, in that I froth milk using the Brady product that is supposedly the commercial embodiment of the '087 and '122 patents, and Bodum's French press product.

14.      I first determined that filling the BonJour product to the fill line indicated (as depicted in Exhibit 24.1) required 160 milliliters of liquid. I note that the height from the base to the fill line was 2.406"

15.      I then filled the BonJour container with 160 milliliters of 2% milk at a temperature of 60.5°[10] as depicted in Exhibit 24.2.

16.      I then inserted the plunger and top portion and pumped the plunger 10 times, which resulted in froth with a height that measured 2.500", or an increase in the overall height of the frothed milk of 0.094" (3/32") from the fill line as depicted in Exhibit 24.3.

17.      I then pumped the plunger an additional 10 times, (for a total of 20 times) which increased the height of the frothed milk to 2.625", or an increase of the overall height of the frothed milk to 0.219" (7/32") from the fill line as depicted in Exhibit 24.4.

18.      I then pumped the plunger an additional 10 times (for a total of 30 times) and recorded a froth height of 3.010" from the base, which increased the froth height to 0.604" (39/64") from the fill line as depicted in Exhibit 24.5.

19.      Exhibit 25.1 depicts the Bodum French press with 160 milliliters of 2% milk placed in the container. I determined that the height from the base to the top of the milk was 2.467".

20.      I then inserted the plunger and top portion and pumped the plunger 10 times, which resulted in froth with a height that measured 2.922", or an increase in the overall height of the frothed milk of 0.525" (17/32") from the original level as depicted in Exhibit 25.2.

21.      I then pumped the plunger an additional 10 times, (for a total of 20 times) which increased the height of the frothed milk to 3.320", or an increase of the overall height of the frothed milk to 0.853" (55/64") from the original level, as depicted in Exhibit 25.3.

---

[10] Measured with an Omega HH806AU Multilogger/Thermometer

4

**EXHIBIT 9**

22. I then pumped the plunger an additional 10 times, (for a total of 30 times) which increased the height of the frothed milk to 3.690", or an increase of the overall height of the frothed milk to 1.223" (1 7/32") from the original level, as depicted in Exhibit 25.4.

23. In each of my photographs of the frothed milk in both Exhibits 24 and 25, there is a discrepancy between my measured heights and the level of the frothed milk as shown in the photographs. This is caused by the fact that immediately after I finished pumping, I adjusted the height gauge to the level of the froth. I then had to circle around the studio lighting stands to snap the shutter. During this time delay, the height of the froth subsided somewhat as can be seen in the photographs.

24. In conclusion of my test results, both the BonJour product and the Bodum French press were able to froth milk, with the Bodum French press producing slightly more froth than the BonJour product.

25. The apparatus that comprised a French press is very old (as detailed in Exhibit 11) and consisted of the following components:

   25.1. a narrow cylindrical glass container in which the height was two times the diameter (See Exhibit 21);

   25.2. a removable lid;

   25.3. a plunger shaft that penetrated the lid and was movable vertically, with a handle grip on the top and the ability to fasten the following elements at the opposite end;

      25.3.1 a top circular plate with a pattern of openings having a small diameter wire spring around its' circumference that fits tightly to the inner wall of the container;

      25.3.2 a fine wire mesh screen formed into a circular shape of similar diameter as the top plate;

      25.3.3 a bottom circular plate of similar diameter as top plate with openings; and

      25.3.4 a means for attaching and holding these elements together at the end of the moveable shaft.

5

**EXHIBIT 9**

26.  I now compare a drawing from 1961of the apparatus of the French press (known in France as a "Bodum" or a "melior"[11]) with Bodum's current FRENCH PRESS® product branded as "CHAMBORD".



| Drawing from 1961 | Current Bodum FRENCH PRESS® |

27.  It is obvious in this side-by-side comparison, that the current Bodum French Press retains substantially same components that comprise the apparatus required to function as a French Press.  In other words, this apparatus as described above is well known and has been around for a very long time.

28.  This apparatus for the French press and its components was known to Brady, yet when he applied for a patent for an apparatus that he claimed to have invented, he failed to disclose to the USPTO this well known and old apparatus that is substantially identical to that which he claimed.

---

[11] *French press* – Wikipedia, the free encyclopedia, attached as Exhibit 20)

6

**EXHIBIT 9**

### III.   THE ACTIONS OF FRANK A. BRADY

29.   Brady Marketing was started about 1976.[12]

30.   Brady Marketing represented Bodum approximately from 1986 through 1996.[13]

31.   Brady was very familiar with the French press coffee makers sold by Bodum during the tenure that Brady Marketing Company represented Bodum.[14]

32.   Yet when Brady applied for a patent for his so-called invention, he approached the USPTO with unclean hands, because he withheld from the patent examiner, knowledge about the French press apparatus that he already had.

33.   I now compare the apparatus that Brady claimed he invented and submitted to the USPTO with the prior art French Press.



| Fig. 8 of the '087 patent | Current Bodum FRENCH PRESS® |

---

[12] Deposition testimony of Frank Brady, P. 12 lines 18 – 20.
[13] Ibid., P. 21 lines 20 – 24.
[14] Ibid., P. 22, lines 15 - 19.

7

**EXHIBIT 9**

34.   The similarities are striking, with the only insubstantial difference is that the spring
      element can be separated from the top element.  Yet when the spring element is placed
      within the top plate, then the two plunger components are identical in their structure.

35.   And that is not his only deceit before the USPTO.  In the table below, I trace a relevant
      time line that further confirms Mr. Brady's deceit and frankly proves that he was not the
      inventor of the frother he claimed.

<table>
<tr><td colspan="3"><strong>TABLE 2</strong><br><strong>RELEVANT TIMELINE OF THE DEVELOPMENT OF A FROTHER</strong></td></tr>
</table>

| DATE | BODUM | BRADY and Related Actions |
|------|-------|---------------------------|
| 1950's | 3 cup Chambord produced by Bonjour, a subsidiary of Melior[15] | |
| Pre 1970 | Bodum buys 60 % of Bonjour.[16] | |
| Late 70's | Bodum, Inc. formed from Bonjour.[17] | |
| 1986 or 1987 | | Starts representing and selling Bodum products |
| 1994-95 | Bodum started developing milk frothers.[18] | 22 Nov. 1994 Ghidini files for Italian Patent for the Fabrosk milk frother. |
| February,1996 | Bodum's milk frother shown at show in Frankfort, Germany.[19] | |
| Nov. 7, 1995 | | Ghidini files for U.S. Patent for the Fabrosk milk frother. |
| April 1996 | | Brady stated: It took a couple of weeks to produce the prototype.[20] |

---

[15] Deposition of Jorgen Bodum, March 23, 2009.  Page 14, l. 2-3.
[16] Ibid. Page 14, l. 12-17.
[17] Ibid. Page 14, l. 7-15.
[18] Ibid. Page 45, l.5-7.
[19] Telephone conference with Mr. Jorgen Bodum on June 11, 2009.
[20] Deposition testimony of Frank Brady, November 16, 2007.  Page 5, l. 14-15

8

**EXHIBIT 9**

| May 1996 | | Frother introduced at the Gourmet show by Brady in San Francisco. [21] |
| August 1996 | 1996 catalog pages showing a *LATTEO* frother and a *SPUMOSO* frother, attached as Exhibit 23. | |
| Fall 1996 | Frother introduced in the U.S. | |
| 25 March, 2002 | | Italian patent to Frabosk held invalid. (See Exhibit 10) |

36.    In my telephone conference with Mr. Jorgen Bodum on June 11, 2009, he stated that the average time to develop a new non-electric product was usually about three months to produce a prototype, except in the case of their frother, which used the preexisting design of the French press, which required less time. This time frame is consistent with my personal knowledge and experience. On the other hand, Brady testified that it took a couple of weeks to develop the frother design claimed in his patents. This is inconsistent with my personal knowledge and experience, and in my opinion, was achievable only by providing a manufacturer with a preexisting product, such as the French press, to copy.

37.    The fact that the French press apparatus functions to hold coffee grounds at the bottom of the container, while Mr. Brady's so-called invention was to froth milk, is irrelevant in my view, since the components and the apparatus are substantially the same. Furthermore, Bodum started the development of their frother many months before Brady claimed to have invented his frother, and the Bodum frother was shown to the public three months before Brady introduced his knockoff product.

**IV.    CONCLUSIONS**

38.    After reviewing all of the documents and products in this case, I can draw only one inescapable conclusion: that Brady approached the USPTO with unclean hands because he failed to inform the patent office of the most relevant apparatus that was known to him. As a designer, it is my opinion that the apparatus described by Brady in his patents is substantially the same as the design of the long produced French press apparatus made

---

[21] Ibid. Page 47, l. 16-23.

9

**EXHIBIT 9**

originally by Melior which was subsequently bought by Bodum. His failure to disclose this prior art apparatus is clear that he intended to deceive the USPTO by not disclosing this old and well known apparatus which he copied and described in his application.

39.   It is also my opinion, that a reasonable patent examiner, when confronted with a method that was well known and relying upon an apparatus that was also well known would have denied granting a patent to Brady since both the method and the apparatus were well known.

40.   Additionally, it is my opinion that since there was no evidence that Mr. Brady had either the education or experience in designing an apparatus with a sophisticated plunger component; I believe that he sent an existing product to a Taiwanese manufacturer with some instructions and/or a sketch to make some minor modifications which resulted in his so-called invention.

## V.      REMARKS

41.   I currently hold the opinions expressed in this Expert Report. As my study of the case continues, I may acquire additional information and/or attain supplemental insights that result in added observations. I reserve the right to supplement this Expert Report and to rely on additional documents and testimony that come to my attention prior to my testimony, if any, at trial. For example, I may supplement this Expert Report to take into account the fact that Meyer may produce documents relevant to my analyses. Nevertheless, I believe that the information before me to date supports the opinions expressed in this Expert Report. I also reserve the right to rely on all other declarations and expert reports submitted in this litigation.

42.   Furthermore, I may also be called upon to provide expert analysis and opinions in rebuttal to any proofs brought forward by Meyer in this litigation.

43.   During my testimony at trial, hearing or deposition, I expect to rely upon exhibits prepared to depict and explain the information contained in this Expert Report or as rebuttal to testimony by Meyer's witnesses. Any such exhibits will be prepared and identified in advance of trial or any hearing.

44.   I HEREBY DECLARE under penalty of perjury that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that

10

**EXHIBIT 9**

willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. §1001.

Respectfully submitted,

Dated: July 21, 2009

Robert John Anders

**EXHIBIT 9**

C

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEYER INTELLECTUAL PROPERTIES LIMITED and MEYER CORPORATION, U. S., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 06-CV-6329 |
| v. | § § | |
| BODUM, INC. | § § | Judge Milton I. Shadur |
| | § | Magistrate Judge Sidney I. Schenkier |
| Defendant. | § § | |

**EXPERT REPORT OF ROBERT JOHN ANDERS, IDSA**

**PART C**

**I.  MY UNDERSTANDING OF PATENT LAWS TO DETERMINE INVALIDITY**

1.  I am familiar with Title 35 U.S.C., §102 (anticipation) which provides for patentability unless each and every element of a claimed invention existed in a single piece of prior art.

2.  I am familiar with Title 35 U.S.C., §103 (obviousness) which requires that an invention was not obvious to one skilled in the art to which the patent pertains and that a primary reference exists which when combined with one or more prior art examples would make obvious the claimed invention.

3.  I am familiar with Title 35 U.S.C. § 112 that requires that a disclosure must be enabling so that one skilled in the art to which the patent pertains may replicate the invention after reading the specification without undue experimentation.

1

**EXHIBIT 9**

## II.  CLAIM CONSTRUCTION

4.  I have read the Court's Claim Construction Order of May 7, 2008 ("*Markman* Opinion").

5.  I understand that the Court has construed "screen" as a perforated plate or meshed wire or cloth."

6.  I further understand that the Court has construed the phrase "the spring is biased to hold the screen in place in contact with, though not sealably connected to, the container." to mean "no sealed connection is made."

7.  The Court has also identified the "spring" as the structure in the "means plus function" clause.

8.  Because the Court has ruled that all of the other terms in the patents require no construction, I have applied the "ordinary meaning" of these terms, as understood by a person of ordinary skill in the art at the time of the inventions, in conducting my analysis.

## III.  A PERSON OF ORDINARY SKILL IN THE ART

9.  A person of ordinary skill in the art to which the patent pertains would have an undergraduate degree in industrial design or mechanical engineering, with one to three years experience.  Alternatively, a person without a degree but with five or more years of practical experience in the consumer products or housewares industry would also be considered one of ordinary skill, having average taste, abilities and skill.

## IV.  MY INVALIDITY ANALYSIS OF UNITED STATES PATENT 5,780,087 UNDER §103 OBVIOUSNESS

10.  The '087 patent to Frank A. Brady issued Jul. 14, 1998 is titled: "Apparatus and Method for Frothing Liquids".

11.  I note that during the application process for this patent that all of the claims relating to the apparatus and the structures were canceled, resulting in seven claims having to do with a method for frothing liquids.  However the method for frothing liquids cannot be accomplished independent and separate from the apparatus.  Thus, although excluded supposedly from the claims, the apparatus is an integral part of the so-called invention. The method cannot exist without the apparatus.

12.  The Plaintiff is asserting claims 1-7 in this case.

13.  Below is my Claim Chart in which I have determined that each and every claim element of the '087 patent is either anticipated or made obvious by the cited prior art.

2

**EXHIBIT 9**

14.    It is my opinion that '087 patent is invalid due to obviousness.  The claimed invention would have been obvious to one skilled in the art to which the patent pertains using the Bodum French press apparatus as the primary reference in combination with United States reissued patent US RE37,137 to Ghidini issued April 17, 2001.  I now examine each and every of the asserted claims of the '087 patent and determine if they read upon the primary and secondary references.

### TABLE 3

#### Asserted Claims Chart for United States Patent No. 5,780,087

| Asserted Claims of the '087 patent | Prior Art |
|---|---|
| 1. (a) A method for aerating a liquid comprising the steps of: | RE37,137, claim 6. |
| (b) providing a container characterized by a height and a diameter, the height being at least two times the diameter; | This is describing an apparatus, not a method. The drawing of a Bodum French press container dated 6.2.84 with Bates number B01781 shows a container having a height that is two times the diameter. |
| (c) placing the liquid into the container; | Found in RE37,137, claim 6. |
| (d) introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts the liquid, the plunger comprising: | Found in the Bodum French press and RE37,137, claim 1. |
| (e) a plunger body having a circumference; | Found in the Bodum French press and RE37,137, claim 1. |
| (f) a screen; and | Found in the Bodum French press and in RE37,137, claim 1. |
| (g) a spring positioned about the circumference of the plunger body such that the spring is biased to hold the screen in place in contact with, though not sealably connected to, the container; and | Found in Bodum French press plunger. |
| (h) pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the container for time sufficient to aerate the liquid until it takes on a frothy or foamy consistency | Found in the Bodum French press and in RE37,137, claim 6. |
| 2. (a) A method according to claim 1, wherein the container is made of glass. | This is describing an apparatus, not a method. Found in Bodum French press container. |
| 3. (a) a method according to claim 1, wherein the liquid is a milk based product. | Found in RE37,137, claim 6. |

3

**EXHIBIT 9**

Case: 1:06-cv-06329 Document #: 161-4  Filed: 04/29/10 Page 30 of 39 PageID #:2230

| | |
|---|---|
| 4. (a)  a method according to claim 3 wherein the pumping step includes pumping the plunger a number of times less than or equal to twenty times, | Found in the Bodum French press. |
| (b)  and wherein the liquid is aerated within the number of times that the plunger is pumped. | Found in the Bodum French press. |
| 5. (a)  a method according to claim 1, wherein the plunger body comprises: | This is describing an apparatus, not a method. Found in the Bodum French press. |
| (b)  a base plate having a plurality of feet-like protrusions; and | It would have been obvious to one skilled in the art to add feet-like protrusions to the base plate so as to allow the plunger mechanism to stand upright.  Additionally, it is my opinion that these protrusions are not required as part of the frothing mechanism, since the commercial embodiment of the claimed invention have no such elements. |
| (c)  said top plate having the spring positioned about the circumference of said top plate such that the spring is biased to hold the screen in place. | Found in Bodum French press container. |
| 6. (a)  A method according to claim 5, wherein the screen consists of a fine wire mesh. | This is describing an apparatus, not a method. Found in Bodum French press container. |
| 7. (a)  a method according to claim 1, wherein the pumping step includes pumping the plunger a number of times less than or equal to twenty times, | Found in the Bodum French press. |
| (b)  and wherein the liquid is aerated within the number of times that the plunger is pumped. | Found in the Bodum French press. |

15.   As a result of my claim analysis above, it is my professional opinion that the '087 patent is invalid due to obviousness.  It is also my opinion that a designer of ordinary skill in the art at the time of the claimed invention would have been familiar with the methods for aerating milk based liquids as well as with the structure of the French press apparatus, and thus the combination would have been obvious to said designer.  All Brady did was to copy an old apparatus which was also known to be capable of frothing milk as performed by Mrs. Bodum and others [22] and fabricate a "method" that was in fact also old and well known and detailed in the prior art patents.  Accordingly, one can only conclude that the '087 is invalid due to obviousness.

---

[22] Deposition testimony of Jorgen Bodum of March 23, 2009, Page 66, l. 13-24

4

**EXHIBIT 9**

**V.    MY INVALIDITY ANALYSIS OF UNITED STATES PATENT 5,780,087 UNDER §112 SPECIFICATION**

16.    The '087 patent is invalid because it fails to provide "a written description of the invention in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."[23]

17.    There is no teaching or description of the type of mesh or screen that is to be used. It fails to identify the following required specifications:

   17.1.    the diameter of the wire or thread;

   17.2.    the material of the wire or thread;

   17.3.    the size of the individual openings within the mesh grid;

   17.4.    the thread or wire count;

   17.5.    neither the Denier or Tex measurement systems defining the linear mass density of the fibers was specified.

18.    There's no teaching or description of how the edges of the mesh or screen terminate so as to prevent unraveling of the wire or threads at the edges.

19.    Accordingly, one skilled in the art to which the patent pertains cannot replicate the apparatus without undue experimentation.  Therefore the 087 patent is invalid for failing to specify "in such full, clear, concise, and exact terms as to enable any person skilled in the art… to make and use the same".

**VI.    MY INVALIDITY ANALYSIS OF UNITED STATES PATENT 5,939,122 UNDER §103 OBVIOUSNESS**

20.    This patent is a continuation of application No. 08/717,764, Sep. 23, 1996, Pat. No. 5,780,087, and incorporates the identical drawings of the apparatus that were contained in the '087 patent.  The patent is titled: "Method for Frothing Liquids".

21.    This patent has 25 claims for a method that incorporates a well known prior art apparatus.

22.    The Plaintiff is asserting claims 1-25 in this case.

---

[23] 35 U.S.C. §112

5

**EXHIBIT 9**

23.     Below is my Claim Chart in which I have determined that each and every claim element of the '122 patent is either anticipated or made obvious by the cited prior art.

24.     It is my opinion that the '122 patent is invalid due to obviousness.  The claimed invention would have been obvious to one skilled in the art to which the patent pertains using the Bodum French press apparatus as the primary reference in combination with United States reissued patent US RE37,137 to Ghidini issued April 17, 2001.  I now examine each and every of the asserted claims of the '122 patent and determine if they read upon the primary and secondary references.

## TABLE 4

### Asserted Claims Chart for United States Patent No. 5,930,122

| Asserted Claims of the '122 patent | Prior Art |
|---|---|
| 1.  (a) A method for aerating a liquid comprising the steps of: | Found in RE37,137, claim 6. |
| (b) providing a container characterized by a height and a diameter, the height being at least two times the diameter; | Found in Bodum French press. |
| (c)  placing the liquid into the container; | Found in RE37,137, claim 6. |
| (d)  introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts the liquid, | Found in Bodum French press. |
| (e)  the plunger comprising; | Found in Bodum French press. |
| (f)  a plunger body having a circumference; | Found in Bodum French press. |
| (g)  a screen; and | Found in Bodum French press. |
| (h)  a spring positioned about the circumference of the plunger body such that the spring is biased to hold the screen in place in contact with, though not sealably connected to, the container; and | Found in Bodum French press. |
| (i)  pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency. | Found in RE37,137, claim 6. |
| 2.  (a) A method according to claim 1, wherein the container is made of glass. | Found in Bodum French press container. |

6

**EXHIBIT 9**

| | |
|---|---|
| 3. (a) a method according to claim 1, wherein the liquid is a milk based product. | Found in RE37,137, claim 6. |
| 4. (a) a method according to claim 3 wherein the liquid is aerated within 20 pumps of the plunger. | Found in Bodum French press. |
| 5. (a) a method according to claim 1, wherein the plunger body comprises: | Found in Bodum French press. |
| (b) a base plate having a plurality of feet like protrusions; and | It would have been obvious to one skilled in the art to add feet-like protrusions to the base plate so as to allow the plunger mechanism to stand upright.  Additionally, it is my opinion that these protrusions are not required as part of the frothing mechanism, since the commercial embodiment of the claimed invention have no such elements. |
| (c) a top plate, said top plate having a spring positioned about the circumference of said top plate such that the spring is biased to hold the screen in place and in sliding contact with the inside wall of the container as the plunger passes through the liquid. | Found in Bodum French press. |
| 6. (a)  A method according to claim 5, wherein the screen consists of a fine wire mesh. | Found in Bodum French press. |
| 7. (a)  A method for aerating a liquid comprising the steps of: providing a container; | Found in RE37,137, claim 6. |
| (b)  placing the liquid into the container; | Found in RE37,137, claim 6. |
| (c)  introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts in the liquid, the plunger comprising: | Found in Bodum French press. |
| (d)  a plunger body having a bottom surface, with feet like protrusions on the bottom surface, and | It would have been obvious to one skilled in the art to add feet-like protrusions to the base plate so as to allow the plunger mechanism to stand upright.  Additionally, it is my opinion that these protrusions are not required as part of the frothing mechanism, since the commercial embodiment of the claimed invention have no such elements. |
| (e)  a screen, and | Found in Bodum French press. |
| (f)  pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency, | Found in Bodum French press. |

7

**EXHIBIT 9**

| | |
|---|---|
| (g)  whereby the feet-like protrusions on the bottom surface of the plunger body serve to assist in the agitation of the liquid during the step of pumping the plunger. | It would have been obvious to one skilled in the art to add feet-like protrusions to the base plate so as to allow the plunger mechanism to stand upright.  Additionally, it is my opinion that these protrusions are not required as part of the frothing mechanism, since the commercial embodiment of the claimed invention have no such elements. |
| 8.  (a)  The method of claim 7, wherein: the container is characterized by a height and a diameter, the height being at least two times the diameter. | Found in Bodum French press container. |
| 9.  (a)  The method of claim 8, wherein: the container has an inner wall; | Found in Bodum French press. |
| (b)  the plunger body has a circumference; and | Found in Bodum French press. |
| (c)  the plunger body further includes means for ensuring that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the container. | Found in Bodum French press. |
| 10.  (a)  A method for aerating a liquid comprising the steps of: | Found in RE37,137, claim 6. |
| (b)  providing a housing characterized by a height and a diameter, the height being at least two times the diameter, the housing having an inside wall; | Found in Bodum French press. |
| (c)  introducing a rod terminating in a plunger into liquid in said housing so that the plunger contacts the liquid, the plunger comprising: | Found in Bodum French press. |
| (d)  a plunger body having a circumference; and | Found in Bodum French press. |
| (e)  a screen; and | Found in Bodum French press. |
| (f)  pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency, | Found in RE37,137, claim 6. |
| (g)  the plunger body further including means for holding the screen such that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the housing. | Found in Bodum French press. |

8

**EXHIBIT 9**

| | |
|---|---|
| 11. (a)  A method according to claim 10, wherein the housing is made of glass. | Found in Bodum French press container. |
| 12. (a)  A method according to claim 10, wherein the liquid is a milk-based product. | Found in RE37,137, claim 6. |
| 13. (a)  A method according to claim 12 wherein the liquid is aerated with 20 pumps of the plunger. | Found in Bodum French press. |
| 14. (a)  A method according to claim 10, wherein the plunger body comprises: | Found in Bodum French press. |
| (b)  a base plate having a plurality of feet-like protrusions; and | It would have been obvious to one skilled in the art to add feet-like protrusions to the base plate so as to allow the plunger mechanism to stand upright.  Additionally, it is my opinion that these protrusions are not required as part of the frothing mechanism, since the commercial embodiment of the claimed invention have no such elements. |
| (c)  a top plate, said top plate having the spring positioned about the circumference of said top plate such that the spring is biased to hold the screen in place | Found in Bodum French press. |
| (d)  and in sliding contact with the inside wall of the container as the plunger passes through the liquid. | Found in Bodum French press. |
| 15. (a)  A method according to claim 14, wherein the screen consists of a fine wire mesh. | Found in Bodum French press. |
| 16. (a)  a method for aerating a liquid comprising the steps of: providing a housing; | Found in RE37,137, claim 6. |
| (b)  introducing a rod terminating in a plunger into liquid in said housing so that the plunger contacts the liquid, the plunger comprising: | Found in Bodum French press. |
| (c)  a plunger body having a bottom surface, with feet-like protrusions on the bottom surface, and | It would have been obvious to one skilled in the art to add feet-like protrusions to the base plate so as to allow the plunger mechanism to stand upright.  Additionally, it is my opinion that these protrusions are not required as part of the frothing mechanism, since the commercial embodiment of the claimed invention have no such elements. |
| (d)  a screen; and | Found in Bodum French press. |

9

**EXHIBIT 9**

| | |
|---|---|
| (e) pumping the plunger by moving the rod in a vertical motion such that the plunger passes through the liquid in the housing for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency, | Found in RE37,137, claim 6. |
| (f) whereby the feet-like protrusions on the bottom surface of the plunger body serve to assist in the agitation of the liquid during the step of pumping the plunger. | It would have been obvious to one skilled in the art to add feet-like protrusions to the base plate so as to allow the plunger mechanism to stand upright.  Additionally, it is my opinion that these protrusions are not required as part of the frothing mechanism, since the commercial embodiment of the claimed invention have no such elements. |
| 17.  (a) The method of claim 16, wherein: the housing is characterized by a height and a diameter, the height being at least two times the diameter. | Found in Bodum French press container. |
| 18.  (a) The method of claim 17, wherein: the housing has an inner wall; | Found in Bodum French press. |
| (b) the plunger body has a circumference; and | Found in Bodum French press. |
| (c) the plunger body further includes means for ensuring that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the housing. | Found in Bodum French press. |
| 19.  (a) A method for aerating a liquid comprising the steps of: providing a container characterized by a height and a diameter, the height being at least two times the diameter the container having an inside wall; | Found in Bodum French press container |
| (b) placing the liquid into the container; | Found in RE37,137, claim 6. |
| (c) introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts the liquid, the plunger comprising: | Found in Bodum French press. |
| (d) a plunger body having a circumference; and | Found in Bodum French press. |
| (e) a screen; and | Found in Bodum French press. |
| (f) pumping the plunger by moving the rod and a vertical motion such that: | Found in Bodum French press. |
| (g) a) the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency, | Found in Bodum French press. |

10

**EXHIBIT 9**

**- 286 -**

| | |
|---|---|
| (h) b) substantially no liquid passes between the circumference of the plunger body and the inside wall of the container during the pumping step. | Found in Bodum French press. |
| 20. (a) A method according to claim 19, wherein the container is made of glass. | Found in Bodum French press container. |
| 21. (a) A method according to claim 19, wherein the liquid is a milk-based product. | Found in RE37,137, claim 6. |
| 22. (a) A method according to claim 21 wherein the liquid is aerated within 20 pumps of the plunger. | Found in Bodum French press. |
| 23. (a) A method for aerating a liquid comprising the steps of: providing a housing characterized by a height and diameter, the height being at least two times the diameter, the housing having an inside wall; | Found in Bodum French press container, |
| (b) introducing a rod terminating in a plunger into liquid in said housing so that the plunger contacts the liquid, the plunger comprising: | Found in Bodum French press. |
| (c) a plunger body having a circumference; and | Found in Bodum French press. |
| (d) a screen; and | Found in Bodum French press. |
| (e) pumping the plunger by moving the rod and a vertical motion such that: | Found in RE37,137, claim 6. |
| (f) a) the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency; and, | Found in RE37,137, claim 6. |
| (g) b) substantially no liquid passes between the circumference of the plunger body and the inside wall of the housing during the pumping step. | Found in Bodum French press. |
| 24. (a) A method according to claim 23, wherein the housing is made of glass. | Found in Bodum French press container. |
| 25. (a) A method according to claim 23, wherein the liquid is a milk based product. | Found in RE37,137, claim 6. |
| 26. (a) A method according to claim 25 wherein the liquid is aerated within 20 pumps of the plunger. | Found in Bodum French press. |

25.   As a result of my claim analysis above, it is my professional opinion that the '122 patent is invalid due to obviousness. It is also my opinion that a designer of ordinary skill in the art at the time of the claimed invention would have been familiar with the methods for

11

**EXHIBIT 9**

aerating milk based liquids as well as with the structure of the French press apparatus, and thus the combination would have been obvious to said designer.  All Brady did was to copy an old apparatus which was also known to be capable of frothing milk as performed by Mrs. Bodum and others [24] and fabricate a "method" that was in fact also old and well known and detailed in the prior art patents.  Accordingly, one can only conclude that the '122 is invalid due to obviousness.

26.  Because this patent is a continuation of the '087 patent, my previously stated invalidity analysis relying on §112 is equally applicable to the '122 patent.

**VII.  REMARKS**

27.  I currently hold the opinions expressed in this Expert Report.  As my study of the case continues, I may acquire additional information and/or attain supplemental insights that result in added observations.  I reserve the right to supplement this Expert Report and to rely on additional documents and testimony that come to my attention prior to my testimony, if any, at trial.  For example, I may supplement this Expert Report to take into account the fact that Meyer may produce documents relevant to my analyses.  Nevertheless, I believe that the information before me to date supports the opinions expressed in this document.  I also reserve the right to rely on all other declarations and expert reports submitted in this litigation.

28.  Furthermore, I may also be called upon to provide expert analysis and opinions in rebuttal to any proofs brought forward by Meyer in this litigation.

29.  During my testimony at trial, hearing or deposition, I expect to rely upon exhibits prepared to depict and explain the information contained in this Expert Report or as rebuttal to testimony by Meyer's witnesses.  Any such exhibits will be prepared and identified at the appropriate time.

30.  I HEREBY DECLARE under penalty of perjury that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. §1001.

---

[24] Deposition testimony of Jorgen Bodum of March 23, 2009, Page 66, l. 13-24

12

**EXHIBIT 9**

Respectfully submitted,

Dated: July 21 , 2009

Robert John Anders

**EXHIBIT 9**